1-4-3-3-5-3 Dennis Paul et al. v. State Farm Mutual Automobile Oral Argument 15 minutes per side Mr. Leiber for the appellants You can have another trial here. Nice to be prepared. You guys are ready for another trial here. If it may please the court, good morning. My name is John Leiber. I'm from Cleveland. I hope the memory of the Browns-Bengals game is sufficiently diminished so you don't hold it against me. I'm representing Dennis Paul in the case of Paul v. State Farm Mutual Automobile Insurance Company and I'd like to respectfully request five minutes of my time for rebuttal. You may, please proceed. And I'm sorry, whom are you representing? Dennis Paul, the appellant. Very well. Could you start out right from the beginning explaining to us why it doesn't look like you're guys just trying to get double recovery here? Very good question, Your Honor. And I think I would submit that double recovery is a misnomer from the standpoint that it is a coverage that my client paid for. The damages that one is entitled to in a personal injury case. He got reimbursed for his medical expenses and they want to be repaid from the tortfeasor and that just seems to be logical to me. So why does he get the money from the tortfeasor that presumably includes the medical expenses? He also gets paid his medical expenses from his insurance company and why does he get to keep both? I don't get that. Well, he's not actually keeping both. The medical bills were paid to the actual providers. Mr. Paul never received any of those proceeds. The damages under Ohio law... Wait a minute. So I understand they got paid to the provider. But he wants the provider to be paid for it and he wants to put that same money in his pocket the way I read this. Correct. And under Ohio law there's absolutely nothing wrong with that. So you're unabashedly saying he gets the money for the medical expenses twice. Wants to use to pay the provider, wants to put in his pocket. It's a choice between who gets to do that. Either Mr. Paul does, who's paid for the privilege, paid for that benefit, or State Farm, who got paid for that and now seeks to have it reimbursed. But if you're implying that he has a right to get the money from the tortfeasor as well as from his insurance company, doesn't the subrogation clause in the policy negate that proposition? If it were properly drafted, you would be correct. Okay, what's improper about it? The law of Ohio, Your Honor, from our argument is that, and established by the Zik case, is that if an insurance company wishes to claim or establish subrogation, a right to recovery, from its own insured's damages settlement, it must do so in specific terms, number one. Number two. Is it significant that it's the same insurance company for both parties? In this case, no. In other instances it may be, but in this case it really doesn't make a difference. The point is that as the language chosen by State Farm, which is the language that it relies upon, it limits its right to seek reimbursement only to, in the language we've seen, the right of recovery of their insured, which is Dennis Paul, that right of recovery has against any party liable for bodily damage. Well, if the tortfeasor, if it's his fault, he's liable, but his insurance company in practice pays it. The insurance company is... Under the liability coverage you're talking about, right? Is the indemnifier on behalf of the tortfeasor, yes, Your Honor. Okay. And the Zik case... That's kind of splitting hairs, isn't it? I mean, if the tortfeasor wasn't insured, he'd have to pay it. If the tortfeasor were collectible... The company's paying what the tortfeasor is liable for. The tortfeasor, the question is whether the insurance company made the decision and provided in the contract that is entitled to recover from the proceeds that the injured person receives from another insurance company. That's what it comes down to. And in the Zik case, it demonstrates that under Ohio law, unless you provide for that specific recovery in your terms, you're not entitled to do it. In prior cases, State Farm has exhibited that if it wants to recover from another insurance company, it puts the language in the policy. It also corrected that defect in the change of the Ohio policy in 2010. When you keep referring to this other case, are you talking about the case that's spelled C-S-I-K? Zik, yes, Your Honor. I don't know how to pronounce that. That's correct. All right. And the 1995 case where they... So there you're taking different language that was in the policy in that case and using it to try to inform what the word liable means in the policy in this case. Do I understand that correctly? I'm sorry, I don't understand your question. The precise language that was at issue in the Zik case is not the same language as in this case, right? I would submit it's almost identical. Well, almost identical and identical are two different things. So here we're talking about any party liable, right? Correct. And what was the precise language in Zik? A responsible party. So any party liable and a responsible party you're saying are almost identical. They're the closest authority we have. I understand they're the closest authority you have, but it doesn't mean they're identical. Insofar as the determination of what a court under Ohio law has previously interpreted this language. It's not the same language, though. That's the problem. I mean, we've written about this repeatedly. We do not construe insurance contracts in gross. I mean, they have their separate terms. And we get this argument a lot in insurance cases that, well, this type of provision means X. That's just nonsense. I mean, I'm not attributing that to you. We construe each contract on its terms. So I think Judge McKeek's question is an important one. I mean, the language here is different.  From my standpoint, Your Honor, the clear point of the Zik case and this case is that an insurance company is only entitled to get what it asks for. And in this case, with the language it chose, it only asked for recovery from its insured if the insured recovers directly from the tortfeasor. I don't read it that way. It says it's from a party liable. The tortfeasor's liability insurer is a party that's liable. Well, I would respectfully disagree with that, Your Honor, because that's also what the Zik case stands for and the other arguments that we raised in our brief in that an insurance company is not a party liable. It's not a party to the case. We have no right to recover against a tortfeasor's insurance company. And that is the significant part of that language. State farms' MPC rights do not exist unless the insured has a right to recover against any party liable. Well, let me ask you two questions about that. I mean, it does seem the question presented by this language is whether, as Judge Berlesman points out, the insurance company is a liable party for the medical expenses from the accident. Why isn't the insurance company a liable party under Ohio Section 3929.05? Doesn't that obligate State Farm to pay Paul's medical bills on behalf of the tortfeasor? Are you familiar with that section? I am. I'm sure you know it better than we do. Unfortunately, I don't because I've never had to exercise it. The point is that is solely a post-judgment issue, and you first have to file a lawsuit, you have to get a jury trial, you have to get a judgment, and then you have to have a situation where either the tortfeasor or his insurance company, her insurance company, doesn't pay after 30 days. Then and only then does the plaintiff, the injured person, have a right to proceed directly against the tortfeasor's insurance company. Every time before then, under Civil Rule 17A, the insurance company is not the real party in interest, and under the Chitlick case, which we cited, we're not allowed to sue them. We have no right of recovery against the tortfeasor's insurance company until post-judgment. Well, wouldn't that be true, really, of the tortfeasor, him or herself, in theory as well? I mean, if they don't settle, you don't have a right of recovery against the tortfeasor either until you get a judgment, right? We're not a liable party until then. I would disagree because the tortfeasor, and particularly in this case, we settled the case. Right, but before that starts. The tortfeasor creates the right to recovery from the initial wrongful act, and as we know in Ohio, insurance takes no process, has no involvement in the lawsuit, in the parties. It's the plaintiff versus the defendant. It's the injured person versus the tortfeasor. The insurance company has to defend the tortfeasor. That's pursuant to the contract with the tortfeasor, of course. You know, I used to do this for a living. The insurance company negotiates, the plaintiff negotiates with the insurance company. He doesn't negotiate with the insured unless his coverage is inadequate. Correct. Or if you're dealing with a company, you'll deal with a representative of the company if there's going to be an excess issue. But in the courtroom, when we're in front of the jury, I can't mention anything about the tortfeasor's insurance company. That's because of the prejudice it would cause if the jury knew about insurance. They'd rather sock the insurance company than shot the insurance company. Well, I don't want to cross that Rubicon with you because now they're entitled to know that we have insurance to cover our medical bills. But let's not go there because we could be here all day. Let me ask you just the other part of the question, which is why aren't they a party liable under the ordinary meaning? First of all, the word liable is not defined in this policy, right? Neither is party. That's correct. Okay. So, you know, that means normally we go to ordinary usage. And a number of the dictionaries, such as Webster's, say that a party is somebody engaged or concerned in a transaction and liable and bound or obligated according to law. And I guess, you know, why isn't an insurance company's obligation to pay damages caused by its insured? Why doesn't that make them a party liable sort of under just the ordinary usage of the term? We addressed that, Your Honor, rather contentiously in the brief. And we're talking about the interplay between the Black's Law Dictionary Standard and the Webster's Law Dictionary Standard. The trial court chose the Webster's Dictionary Standard. And without being overly critical of the trial court's order, which I think we were in our brief. Oh, don't be. You were fine. I don't want to pile on, but the greater issue from my standpoint is, and I don't want to seem like I'm putting our eggs in all one basket, but we really are. This case is about the application of the Zik case, plain and simple. If the Zik case doesn't carry persuasive authority, and we're then talking about the definition of liable party under the ordinary usage, that's not as persuasive as an argument standing on its own. I appreciate your candor. As far as cases that are persuasive, why is not Ferris v. State Farm a better case? It doesn't deal with the issue at all. It doesn't mention any party liable. There was no argument. It dealt with that same language. It dealt with the any party liable language. As did every single one of the cases cited by State Farm. But none of them dealt with the issue of whether State Farm was entitled to make a subrogation claim at all as being a party liable. This is the risk you get into with using such language in that counsel in those cases didn't question State Farm's right to seek that claim. They said they looked at the language. Whatever decision they made, they decided to challenge it on other grounds. In Ferris, I believe they tried to resurrect the old insurance company is not entitled to subrogate to itself argument. The Ferris court pointed out there was no authority that the plaintiff had offered in support of the argument. Ferris was based upon two Summit County appellate cases, which also did not address the issue that is raised by us and by the Zik case. Ferris involves the same language but different issue, and Zik involves different language but same issue. That's basically it. I could see how you could structure it in that way, and I go back to the point I make is that while different, Zik contains the most concise and most accurately close language than any other case that's been cited to this court. You'll have your rebuttal time. I appreciate it. Thank you. May it please the court, Heidi Dauenberg of Shephard and LLP on behalf of the Appley State Farm Mutual Automobile Insurance Company. Your Honors, I'd like to begin just to talk about the Zik case because counsel has made clear that their argument really does rest on that case. We believe that the Zik case is completely inapposite in this case, and it's because it deals with a completely different factual setting. Zik involved a situation where a party was injured in an automobile accident and their health insurance carrier paid for their medical bills. The tortfeasor in that case was either underinsured or uninsured, I can't remember which, but the policy provision that gave the policy dollars to the injured party in that situation was his own insurance policy, his underinsured or uninsured motorist coverage. I mean, just walk us through then again how the sequence here, like what insurance company pays and then what are they asking for? Sure. So we have the accident, we have a tortfeasor, the insured goes to his own insurance policy and says, please pay me my uninsured or underinsured motorist coverage under an auto policy. And then the health insurer is also paying for the medical bills at the same time. And the health insurer says, wait a minute, I have subrogation rights. I have subrogation rights under my health policy and I want to have my payback because the auto policy is already paying this under your uninsured or underinsured motorist coverage. Payback from whom? They want the coverage from the injured party, from his own insurance dollars. They want it from his own auto company. Exactly. Not from the tortfeasor. That is correct. And that's the critical difference here because the specific policy language that was at issue in SISC was when another insurer is, well, let me correct myself, when there are damages or compensation recovered from a responsible third party. Third party. Third party. But the ambiguity that was found in the SISC case was not about who was a liable party or a responsible party. It was in the word compensation. And the court held that damages are damages, that's liability-related money. Compensation can be damages or something else. They took a narrow construction of the word compensation, deemed it to refer only to damages, and said your uninsured or underinsured motorist coverage is not a payment of damages. Your uninsured or underinsured motorist carrier, your auto policyholder, does not step into the shoes of a tortfeasor when it pays your benefits. Those are benefits that you bought for yourself to protect yourself against loss. That's not damages that are paid to you. Well, but it would seem like the relevant policy language in SISC is, quote, responsible third party. I mean, I think Mr. Liver is saying, you know, what's the difference here? Responsible third party, party liable. And, I mean, in that case they said the segregated insurer, quote, is not a responsible third party because the carrier was not the primary cause of the accident. So he's saying the point of SISC is that Blue Cross isn't, well, no, that the auto insurance company, right, is not a responsible third party because they didn't cause the accident. Wouldn't that reasoning apply here? That state, you know, State Farm as the tortfeasor's insurer is not a responsible third party because the carrier was not the primary cause of the accident. I understand your point, Your Honor, and here's the difference. In SISC and also in Sawyer, the courts, when they were looking at what's a responsible party, were looking at the tortfeasor and their insurer together. And the presumption was responsible party includes both of those people, but it doesn't include the carrier for the injured party where the injured party paid for their own coverage to guarantee themselves against a loss if they were hit by a person who was underinsured or uninsured. So they treated the tortfeasor and that tortfeasor's liability carrier as one essential unit, and that's exactly what the district court did here. There's language in the opinion? Because this language would suggest a distinction between carrier and tortfeasor when they say because the carrier was not the primary cause of the accident. Sawyer says it more specifically. The SISC case doesn't say it as explicitly, but if you look at the case that the SISC court relies on in reaching its decision, that's a Wisconsin case. I think it's employer's health. It's definitely cited in the briefs, but that case talks at length about the difference between an uninsured or underinsured carrier on the one hand. Is that the Sawyer case you're talking about? The Sawyer case says it specifically. Is that Ohio? That's an Ohio case as well. They have two cases, the SISC case and the Sawyer case, both from Ohio that essentially say when you're looking for a responsible party, you don't look at an uninsured or underinsured motorist carrier. Neither one of those cases addressed at all whether or not a tortfeasor and their liability carrier are essentially one unit for purposes of paying or being responsible for paying for the damages that an injured person incurs. And if you go back to the district court's opinion, the district court gave two different independent reasons for holding in favor of State Farm here, and the first was you don't even need to look at the any liable party language. You don't even have to read it because what we're talking about when we're talking about liability coverage is an asset of the driver. You're talking about an asset of that tortfeasor, and you can't separate that tortfeasor from his liability insurance dollars. When that payment is made, the appellants agree with us that if this money had been paid by State Farm's liability carrier, first to Mr. Coleman, the tortfeasor, and then over to the Pauls, everything would be fine. We'd be entitled to subrogation. But because that step didn't take place, because we didn't first funnel the dollars through the liable person and then over to the injured party, now all of a sudden our subrogation rights have disappeared. And that is really, in essence, very similar to what the Ferris Court said is not something that we ask insurance companies to do. We don't exercise, we don't differentiate just because of where the money has flowed through to get the money to the correct place. In Ferris, what happened was we had a double-with case, State Farm injured person, State Farm tortfeasor. And when the MPC payment was made in subrogation, when the reimbursement check went over, State Farm didn't first direct it to the injured person and then give it to State Farm. It paid directly. And the injured person in that case said, Wait a minute, that's not a recovery for me because I never got those dollars. They went straight to State Farm, and that's not right. And the court said, We're not going to make you engage in unnecessary check writing to accomplish the end of your policy. So it's critically important to remember that these liability dollars are, in fact, the asset of the tortfeasor. And we have Ohio State Supreme Court authority holding that liability dollars under an insurance policy are an asset of the tortfeasor. That takes you out of the any liable party argument altogether. The other point I think that it's important to make is, if you adopt, even if you adopt, the policy construction that the Pauls have asserted here, it actually doesn't get them anywhere because that policy language has to mean the same thing for everybody under the contract. And if what we're talking about here is State Farm can only get subrogation or reimbursement if the recovery is paid straight out of the pocket or the checking account of a tortfeasor, then the Pauls were responsible for making sure that our rights to have that happen are not impaired. They had to hold our subrogation rights in trust under the same policy provision that they put in issue here. And in that instance, what they have to do then at the settlement table is say, wait a minute, everybody's got to stop. We've got to make sure that my money for my medical bills comes straight from the tortfeasor and then comes over so I can make my reimbursement payment. Otherwise, I'm in breach. And that's what the Macheco case is all about. Well, I mean, if we really went to this length, then they might still win this case, but you'd go sue them for, you know, breach of their obligation under the contract. That is one possible result, Your Honor. So I don't think it gets them anywhere. It would be that they have, in fact, breached the terms of their policy and then lose the right, frankly, to sue us for breach because they've engaged in a breach of their own policy. And a person who stands in breach can't assert an effective breach of contract claiming their own right. So it defeats their cause of action here because they would have failed to protect our subrogation rights in the first instance. But the strongest point, I think, from the district court was, first, if you look at what liability insurance coverage actually is, it's an asset of the tortfeasor, and that payment that extinguishes the tortfeasor's liability and comes from his liability carrier under his contractual right to demand that payment is, in fact, a payment by the tortfeasor himself in any event. And then if you look at the any-party liable language and you apply the common dictionary definitions to those terms, what you end up with is the same place. You end up with State Farm as the liability carrier, as Your Honor pointed out earlier, ultimately personally and independently liable to pay whatever is owed under that policy if it refuses to do so voluntarily. So it can become a party liable, and it will be a party liable if it doesn't pay up, as under Ohio law. And so what you're talking about there is not a question of the nature of the party but the timing of when the direct suit can be brought against that entity. So under either one of these formulations, State Farm's policy language is sufficient to create the right of subrogation whether or not damages ultimately are paid directly out of a tortfeasor's own checking account or whether or not they're paid directly by the insurance carrier at the time that a settlement is made. If Your Honors have no further questions, I think I've covered my points. Thank you. Thank you. If I may, I'd like to return to discuss what I think is a very important point on our Zik case, which I think was lost a bit in the prior discussion. And I'm sure the Court has done so as well as your able law clerks and staff, but Zik I think needs to be read carefully because in comparison, as with the other cases we've cited, the State Farm Medical Payments Clause in the case at hand clearly does not create the right to subrogation as they now claim. In Zik, the Blue Cross subrogation claim words specifically said, subrogation what it is. And I highlight, it said, for example, if you are injured in an auto accident and the other driver's insurance pays your medical expenses, Ohio Med can recover any money it has also paid for the same medical expenses. Doesn't that distinguish this case, though? I mean, because it wasn't the other driver there. It is here, right? I mean, that is true, right? If my point, Your Honor, is that if State Farm had that language, we wouldn't be here. Right, but my point is that, I mean, wouldn't you agree that that language supports a distinction between this case and that one? Absolutely not. I mean, in that case, it had to be, what was it, the other driver. The other driver's carrier has to be the one that pays. In Zik, there was no other driver's carrier because he was uninsured. Right, and that's why, so, okay. If I may make that point. Please go ahead. But in this case, the only reason that there is is State Farm's on both sides. The only reason why they're... The only way you can analogize that situation to this situation is because State Farm is making the payment regardless of whether they're acting on behalf of the tortfeasor or the insured. That goes to a separate issue which occurred earlier, but as Judge Bertelsmann asked me earlier, I don't think it makes a difference for these purposes. I interrupted your answer. It's the tortfeasor's carrier, period. Go ahead and answer Judge Kethledge's question because if that doesn't answer it, then... Okay, thank you. For purposes of this case alone, the point is that there is nothing in the State Farm policy that allows State Farm to have a right of subrogation through my client on a recovery from another insurance company. That's the point. The sick case, that subrogation clause, through a tortfeasor's carrier, is right there. And what Zip points out is that because they're dealing with another insurance company, an underinsured motorist carrier, and as you pointed out when asking my colleague, my opponent, the same question, when they are looking at responsible third party, the insurance company is not driving the car. They're not the tortfeasor. They're not causing the accident. They are not the responsible third party, or in our case, the party liable or a party liable. They're a third party indemnifier that only comes into play when there's time to pay money. What about Ms. Dallenberg's point that in sick, in the cases it relies upon, they do merge, so to speak, the third party tortfeasor and insurance company for purposes of party responsible, party liable analysis? Because as we just covered, the subrogation language clearly creates that. If we were dealing with a sick subrogation term, as I said before, we wouldn't be here because Zip clearly says that as a subrogated carrier, we're entitled to have a right of subrogation against the tortfeasor and the tortfeasor's insurance company. State Farm provided for that same right in the 1995 policy from Alaska in the Maynard case. And then in 2010, when they changed this policy, they provided for that same right. But the difference, as Judge Berthelsen, I think, caught on to, is that if it were this case in 2010,  because the 2010 amendment limits their right to recovery on anything that comes from a liable person or organization, another organization. So in that case, they have eliminated... You know, that they wrote it better later doesn't mean it wasn't good enough the first time. I'm sure you covered it in your brief. It's been a little while since I read it. But what's your response, again, to the district court's asset theory, which Ms. Dallenberg reiterated here this morning? I understand why they have focused so intently on it. I think it's quite a stretch, because that case is limited to a probate proceeding. Well, I'm not talking about... Forget about cases for a minute. Let's talk about the theory itself, the theory being he's got a contractual right to have them pay, the tortfeasor has a contractual right to have his insurer pay his liability. And that right is a property interest. It's an asset. He exercises it to extinguish his liability. Why isn't that payment from him? I'm going back to the strict and plain meaning of the terms of the subject language in this case, which says that State Farm's right to reimbursement or subrogation, in this case, it doesn't make a difference. Their right to get their insured's money is limited to the insured's right to recover against either the tortfeasor or the tortfeasor's carrier, is their argument. I'm saying it's the right to recover is limited only to the tortfeasor. But this answers that. They're saying this is recovery from the tortfeasor because it's his asset. And that's what I'm trying to elicit your kind of handy response to. We have no right to recover that until there's a post-judgment remedy. He coughed it up. He went to his insurer and said, okay, I'm exercising my contractual right. Pay these people so they stop chasing me. Why isn't that payment from him? Because from my standpoint, you are reading into policy words that aren't there, number one. And number two, you're looking at what is the intent. Ultimately, you're looking at what is the intent of State Farm here because the intent of Dennis and Sharon Paul is of no consequence because State Farm didn't call them up and say, hey, what do you want in this policy? You're saying that the intent of State Farm, at least the way they drafted it, was to recover from the tortfeasor only when the tortfeasor is able to pay out of his own pocket or when the insurance company, his insurance company, pays the tortfeasor and then he uses that money to pay the victim. It's limited only to the right of recovery from the tortfeasor, period. Where that money comes from is of no consequence. But they drafted that language, and back to my original point, they only get what they ask for. If we start going off into different permutations, I'm sure we can figure out a way to support it. You're the one that took us off on the tangent of what the insurance company intended, which can't possibly be true. So you can't rest your claim on that. You have to rest your claim on no matter what they intended, this is what the express language means. Well, in order to, as we understand the law to be, you're going to interpret the contract to determine the intent of the parties. And in reality, we're only talking about the intent of State Farm. And my point is that... State Farm is going to be there is no double recovery. Respectfully, Your Honor, that was not an issue. Who gets it from another source, they've got to pay back. That was not an issue before the district court. And double recovery... What's the intent of State Farm? The way this system works, State Farm's intent is that the person won't get a double recovery. Well, that's what they say now, but in 2010... They say any time because they're not idiots, they don't want to give their money away. You were doing fine until you got to the point of trying to infer what State Farm intended. Well, if I just may make, just quickly... No, we don't need to pursue that. That was a good try on that one. All right, don't, you know, don't sweat it. Thank you very much, Your Honors. Thank you. The case will be submitted. We have no other cases...